CHARLES H. BALLINGER, APPELLEE, v. OSMYN S. KINNEY, APPELLANT.

FILED JUNE 29, 1910. No. 16,066.

1. **Easements:** OBSTRUCTING RIGHT OF WAY: INJUNCTION. An action will lie at the suit of the owner of a right of way over the defendant's land to enjoin the latter from permanently obstructing such way.

2. ———: APPURTENANT AND IN GROSS: PRESUMPTION. It will not be presumed that the grant of an easement is in gross when the right can fairly be construed as appurtenant to some other estate.

3. ———: RIGHT OF WAY: PASSES BY DEED. Title to a right of way appurtenant to a tract of land will pass as an incident to a deed for the dominant estate containing no reference to appurtenances.

4. ———: ———: OBSTRUCTIONS: EXTINGUISHMENT OF RIGHT. Where an easement is created by an unambiguous written instrument, the estate conveyed thereby will not be cut down by the failure for six years of the owner thereof to compel the proprietor of the servient estate to remove permanent obstructions maintained by him upon the way in violation of the rights of the owner of the dominant estate.

APPEAL from the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*John H. Linderman* and *E. A. Cook,* for appellant.

*George C. Gillan* and *Warrington & Stewart, contra.*

ROOT, J.

This is an action to enjoin the defendant from obstructing a right of way which the plaintiff asserts over the defendant's real estate. The plaintiff prevailed, and the defendant appeals.

The plaintiff alleges in his petition that in 1902 one James, the owner of the south 49 feet of lots 7 and 8 in block 45 in the village of Lexington, sold the south $24\frac{1}{2}$ feet thereof to the defendant, subject to a contract between said parties which is set out at length in the petition. By its terms the north wall of a brick building upon the tract conveyed by James became a party wall. The contract further provides: "That the said O. S. Kinney shall have the right to erect and maintain a coal shed, not exceeding six by six feet, on the east end of the tract owned by said James as aforesaid; and that the said James shall have the right of way of egress and ingress, jointly with the said O. S. Kinney, over the east seven feet of the tract owned by said Kinney as aforesaid." The parties further agree that the contract "shall remain in full force, and binding upon the parties hereto, and their successors in title, until * * * canceled or modified by mutual consent of such parties, or their successors, expressed in writing and duly signed and acknowledged as required by deeds to real estate." The plaintiff further charges that he purchased the north fraction of the south 49 feet of said lots in 1906, and thereby succeeded to the easement vested in his grantor; that the defendant has converted said strip of land into a room for the manufacture of ice cream, and obstructs said path by maintaining thereon a gasoline engine, an ice cream freezer and other obstacles, so that it "has become useless

to plaintiff and his tenants, and has thus practically excluded the plaintiff and his tenants from passing over said right of way," etc. The prayer is for equitable relief and an injunction. The defendant, among other things, in his answer expressly denies "that the plaintiff has any interest in, claim to, or right of egress and ingress over the seven feet of ground mentioned in the petition."

1. The defendant contends that the facts stated in the petition are not sufficient to constitute a cause of action in the plaintiff's favor, for the reason that the plaintiff does not allege the use of the way is necessary for the transaction of the business conducted in his building, or that he has been excluded from the way, or that the contract creating the easement is still in force. There is no presumption that the contract has been canceled, and the petition does charge the defendant with permanently obstructing a considerable part of the way. While the pleader does not state that the plaintiff has been irreparably injured by the defendant's acts, the allegations in the petition are sufficient to bring the plaintiff within the protection of the rule announced in *Agnew v. City of Pawnee City*, 79 Neb. 603. Furthermore, the defendant in his answer specifically denies the plaintiff's estate of an easement, and the plaintiff is entitled to have his title thereto quieted and confirmed if any such right exists.

2. It is further argued that the plaintiff did not succeed to James' right of way; that the contract is ambiguous, and the defendant and James by their acts construed the contract so as to give the defendant a right to maintain his engine, freezer, ice box and other obstructions in their present situation. The contract does not contain the word "heirs," but it does create in each party and his successor in title an easement in the lands of the other, and technical words are unnecessary to create an estate of inheritance in lands in Nebraska. Comp. St. 1909, ch. 73, sec. 49.

It is true, as suggested by counsel for the defendant, that no reference is made to appurtenances in the deed

from James to the plaintiff. The contract, however, does not create an easement in gross, but one that may be enjoyed solely in connection with other real estate. Under these circumstances the easement should be considered appurtenant to that land. The easement, being appurtenant, passed by James' deed to the plaintiff notwithstanding said instrument contains no reference thereto. *Smith v. Garbe,* 86 Neb. 91. We are unable to agree with the defendant in his contention that the contract is ambiguous. The agreement is that the parties shall jointly have the right of way for ingress and egress over the east seven feet of the tract conveyed to the defendant. The testimony discloses that the defendant purchased his real estate and granted the easement in 1902. At that time a brick building covered all of the tract except that part subjected to the right of way. The parcel of land to which James retained title was then vacant, but subsequently a building, planned for a business house, constructed upon the greater part of that real estate, was occupied by James for a time as a hardware store, and is still devoted to that purpose by the plaintiff's tenant. The defendant shortly after purchasing his building took possession and still occupies a considerable part of the way in dispute except a strip about 18 inches wide extending the length thereof; he maintains a wall along the south end of the way, and the door by which entrance may be secured thereto cannot be opened from the outside. The litigants before this suit was commenced did not confer at length concerning the situation, but the defendant admits the plaintiff stated his tenant complained and desired the way opened, to which the defendant made no answer. The defendant testifies that, unless compelled to, he will not remove any obstruction from the way. The plaintiff's tenant does not use the way for transporting merchandise to his store, but occasionally travels the path on foot. The obstructions were in their present position at the time the plaintiff purchased his property and the evidence tends to prove that James made no com-

plaint on that score. The contract creating the easement is evidenced by an unambiguous written instrument recorded in the office of the register of deeds. It is our opinion that James' failure to oust the defendant from his unlawful use of the way did not extinguish that easement or narrow the plain meaning of the language used by James and Kinney to define the extent of their respective grants.

The evidence and the law sustain the decree of the district court, and it is

AFFIRMED.

SEDGWICK, J., dissenting.

The real matter in dispute between these parties is whether the defendant must leave the whole 7 feet open for plaintiff's "ingress and egress," or may make such use of this part of his property as will not prevent plaintiff's "ingress and egress." This requires a construction of the contract as to what sort of ingress and egress was intended by the parties. The majority opinion does not discuss this question, and so the real controversy is ignored. By the decree complained of "the defendant and all persons claiming under him be, and are hereby, perpetually enjoined from maintaining on said east 7 feet of said tract owned by him any obstruction or obstructions that *will in any manner interfere with or prevent* the plaintiff or his tenants from the use of the whole said 7 feet, * * * as a right of way." Thus the contract is construed to mean that this 7-foot strip shall be devoted wholly to ingress and egress by the respective parties, one party having no more right to this part of the real estate than the other, virtually making them owners and tenants in common of the said 7-foot strip. It is said there is no ambiguity in the contract. This is the clear and undoubted meaning. Nevertheless, it was said in the opinion that "the obstructions were in their present position at the time the plaintiff purchased his property and the evidence tends to prove that James made no complaint on that score." In 1902 James was the owner of both

tracts and also the store building on the south tract, and at the east end of said store building was the 7-foot strip. James then sold the south tract and store building to Kinney, and retained the north tract and also by the contract reserved the right of "egress and ingress." James had before that time inclosed the south end of the 7-foot strip which opens upon the street and placed a door in said inclosure for "ingress and egress." He had been using this doorway for ingress and egress to the back part of the store building which he then sold to Kinney. It was and is in the interest of both parties that the entrance to this passageway should be controlled from the inside, as it admits persons to the stores of both parties alike. He did not in the transfer to Kinney reserve the whole 7 feet for ingress and egress. He reserved only a right of way over the east 7 feet for that purpose. The right of ingress and egress alone was reserved and that was limited to the east 7 feet.

This action was begun on the 14th day of May, 1908. James sold this property to Kinney on the 2d day of February, 1902. For more than six years these parties have by their actions construed this contract to reserve to James and his grantees the right of ingress and egress, and nothing more. This I think was the necessary construction of the plain language. James built a hardware store on the tract retained by him soon after he sold to Kinney. By the terms of the contract the parties are to have equal joint right of ingress and egress, but they have no joint right in the property except the right to pass through it. Subject to this right to pass through the property, the land belongs to defendant, and he has all the beneficial interest and use of it that does not interfere with the plaintiff's right of ingress and egress. Under this injunction he must remove the inclosure at the south end and keep everything off from this land, so that the plaintiff can not only have ingress and egress thereon, but can go over any part as he may desire. There must be nothing there, no use of the land, that will "in

any manner interfere with or prevent" the plaintiff to pass along the east or center part, if he should tire of passing on the west part. If the agreement is unambiguous, as stated in the majority opinion, its plain meaning is, as above stated, that James and his grantees shall continue to have the right to pass over this land as he could by the passage which he had constructed for that purpose, and was used for that purpose when he sold to Kinney.

It is not a question whether James or his grantees could oust the defendant "from his unlawful use of the way," which seems to be the point decided in the opinion. The question is: What is the lawful use provided by the contract that the plaintiff and defendant are respectively authorized to make? It is said in the opinion that "the defendant admits the plaintiff stated his tenant complained and desired the way opened to which the defendant made no answer." The record shows that the tenant himself was upon the witness-stand and stated under oath that he had never complained to the defendant in regard to obstructions in the right of way, and when questioned he refused to say that he had any further use of a passageway on this land than was already accorded him. There is nothing in the contract from which to determine for what purpose it was intended the plaintiff should use this right of ingress and egress. The real intention and meaning of the contract therefore in this regard should be determined from the circumstances and the practical construction, if any, that the parties put upon the contract by their conduct after it was entered into. In these respects the petition is deficient, and the evidence is not as satisfactory as it might be. In construing this contract to ascertain the real meaning of the parties thereto we must take into consideration the circumstances and conditions existing at that time and the practical construction that the parties have put upon the contract in the succeeding years. It was of course understood between the parties at that time what sort of business would be

transacted in the north building.   This contract was made with reference to that understanding.   There is no direct evidence as to what that understanding was, but the fact is that James built a hardware store thereon and he and his tenants have used it ever since for that purpose.   These parties have put a practical construction for six years upon their contract, and now it is attempted to compel Kinney to remove this entry way at the south end of the 7-foot strip and to abandon the whole 7-foot strip to the use of Ballinger, without any evidence showing that Ballinger has any need of it or even desired it, except for the purpose of demanding the "pound of flesh."