PERRY L. HOLE, APPELLEE, V. JACK L. HAMP, APPELLANT.
278 N. W. 480

FILED MARCH 11, 1937. No. 30187.

*McCarthy & McCarthy* and *William P. Warner*, for appellant.

*W. V. Steuteville* and *Sidney T. Frum, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and YEAGER, District Judge.

YEAGER, District Judge.

This is an action in equity which was instituted in the district court for Dakota county, Nebraska, by Perry L. Hole, plaintiff, who is appellee herein, against Jack L. Hamp, defendant, who is appellant herein. The purpose of the action is to effect the cancelation of a lease upon lands in said Dakota county, which lands were owned by plaintiff and which were occupied under lease by the defendant, and to enjoin the defendant from committing waste thereon.

A statement of the facts necessary to the determination of this case is as follows: On or about the 26th of August, 1933, plaintiff and defendant entered into a written lease which was to become effective March 1, 1934, and extend over a period of five years, or until March 1, 1939. The lease provided for an annual cash rental payable to plaintiff by defendant, and also contained a cancelation clause

by the terms of which the defendant agreed to deliver up the premises at the beginning of any year except the first year, provided plaintiff gave written notice of cancelation during the months of May, June and July of the preceding year and paid to defendant the sum of $1,000.

On July 17, 1936, the plaintiff, through his agent, gave defendant notice of cancelation to become effective on March 1, 1937, and made a tender of the specified $1,000. The defendant refused to accept the tender and refused to execute in writing a formal agreement of cancelation to take effect on March 1, 1937, which said formal agreement of cancelation was set forth and provided for in the lease.

The facts stated are alleged in the petition of plaintiff and are also admitted by defendant in his pleadings and testimony. Plaintiff further alleges in his petition that, after the service of notice of cancelation, the defendant proceeded to commit waste upon the land by selling and disposing of trees which were situate upon the land.

The prayer is for cancelation of the lease, for an accounting of rentals for 1936, and for timber sold after July 17, 1936, that being the date of notice of cancelation of the lease, and an injunction to prevent waste and destruction of buildings and improvements.

The defendant, in his answer, denies the commission of waste and denies that he sold or disposed of any trees after July 17, 1936. In addition to his answer, defendant has filed a counterclaim and cross-petition which will be hereinafter referred to as cross-petition. In his answer and cross-petition, the defendant alleges that on or about the 1st of May, 1934, he had a subsequent oral agreement with the plaintiff wherein it was agreed that, if the defendant improved the land, fences and buildings and cleared and seeded more land than was required of him, and provided plaintiff sold the land before the expiration of the full term of the lease, plaintiff would pay him for excess improvements, clearing and seeding, and that plaintiff would not cancel the lease without making such payment. He further alleged that pursuant to such agreement he made improve-

ments and cleared and seeded additional land, the cost of which aggregated the sum of $1,503.94 His prayer was for dissolution of injunction, the dismissal of plaintiff's petition, judgment for $1,503.94, and for the $1,000 tendered by plaintiff.

The trial was to the court on all of the issues presented, and at its conclusion a decree was entered finding in favor of plaintiff and decreeing a cancelation of the lease as prayed. The defendant was enjoined from removing any repairs, fencing, windmill or improvements and from in any other manner interfering with or destroying anything on the land in question. The cross-petition of the defendant was dismissed with a finding that the evidence did not sustain the answer and cross-petition.

The record is clear and without dispute that, in the absence of proof of the existence of the alleged oral agreement of May 1, 1934, the plaintiff was entitled to the relief prayed in his petition. The existence of any such agreement is denied by plaintiff. The defendant, his wife and his wife's mother have testified as to the time, place and terms of the agreement. The defendant testified in response to questions as follows: "Q. Where was this conversation? A. In the house. Q. In the dining-room? A. Yes. Q. Before you left the table? A. I had mentioned to Mr. Hole that morning I had to have a new windmill and there would have to be 5 or 6 miles of new fence built. I said, 'Mr. Hole, how much have you got to put into it and we will go ahead?' 'Mr. Hamp,' he said, 'I am financially embarrassed.' He said to go ahead and do the best you could, and I said, 'What if you sell the place?' 'Mr. Hamp,' he said, 'I am not going to sell this place. I am going to keep it. But if I do sell this place I will protect you and pay you for every additional thing you put on over and above the lease.' Q. Who was present? A. My wife and mother-in-law. Q. Well, what was said about that? A. What do you mean? Q. Anything further said about it? A. No, that was the conversation. He told me he would protect me and pay me for all additional work."

Mrs. Hamp testified as follows: "Q. Tell that conversation. A. They was talking about improvements around the place, and Jack said to Mr. Hole that they had to have a new windmill, they didn't have no water. The other one didn't supply enough water for the cattle. Jack said he had to put in a lot of new seeding and that the sunflowers were so thick in places you couldn't raise nothing on it. And then they got to talking about the fences, couldn't hold the cattle out all the time and couldn't keep the cows in. Mr. Hole said he didn't have no money to put in the place, but for Jack to go ahead and do that work. Jack said, 'What will I do if you sell the place?' Mr. Hole said he didn't have any intention of selling, but if he did, he would pay Jack for everything he put on it."

Mrs. Schuster, the mother-in-law, testified as follows: "Q. You may tell the court what conversation you heard. A. They was talking about the fences on the place would all have to be new and a windmill put up, and all the seeding that had to be done; and Mr. Hole told Mr. Hamp he didn't have the money to put those things in, and Jack said, 'If I put them in and you sell the place, what will I do?' They talked a while and Mr. Hole said, 'Just go ahead with the work and do things, and if I sell the place I will pay you for it.'"

The answer and cross-petition are in terms equitable. They are in terms equitable since they set forth that plaintiff agreed that on or about May 1, 1934, he would not exercise the option to cancel the lease without first compensating defendant for improvements, repairs, clearing and seeding, in excess of the requirements of the written lease.

An examination of the evidence quoted herein, which reflects fully the terms of the oral agreement, if there was an oral agreement, discloses that the cancelation of the written lease according to its terms was in nowise dependent upon the oral agreement. The defendant's evidence, when weighed in the most favorable light to defendant, supports no equitable ground of relief, but only an action at law

for the recovery of money expended for repairs, improvements, clearing and seeding in excess of the requirements of the written lease and $1,000 which had already been tendered and which tender had been kept good by deposit of the amount with the clerk of the district court. 62 C. J. 697; *Ahrens v. Fenton,* 138 Ia. 559, 115 N. W. 233; *Reed v. Armstrong,* 18 Ind. 446; *The Rossend Castle,* 30 Fed. 462; *Kansas City Transfer Co. v. Neiswanger,* 27 Mo. App. 356; *Taylor v. Brooklyn Elevated R. Co.,* 119 N. Y. 561, 23 N. E. 1106; *Mann v. Sprout,* 185 N. Y. 109, 77 N. E. 1018; *Sharpless & Co. v. Dobbins,* 1 Del. Co. Rep. (Pa.) 25; *Schnur v. Hickcox,* 45 Wis. 200.

The burden of proof was on the defendant to prove by a preponderance of the evidence the existence of the alleged oral agreement and what he was entitled to recover, if anything, under the terms thereof. *Cohen v. Swanson Petroleum Co.,* 133 Neb. 581, 276 N. W. 190; *Pierce v. Miller,* 107 Neb. 851, 187 N. W. 105.

On the question of the existence of the oral agreement, the trial court made a specific finding that the defendant had failed to prove the allegations of his answer and cross-petition so as to entitle him to judgment against the plaintiff in any sum whatsoever. If this finding on defendant's cross-petition shall be weighed in the light of the rule in equity actions, which is that on appeal in an equity action involving questions of fact where there is an irreconcilable conflict in the evidence, in determining the weight of evidence, this court will consider the fact that the trial court observed the witnesses and their manner of testifying, then we are not in a position to say that the court erred in weighing this question on which the defendant was required to sustain the preponderant burden. *Johnson v. Erickson,* 110 Neb. 511, 194 N. W. 670; *Otto v. Gunnarson Bros.,* 102 Neb. 613, 168 N. W. 361; *Enterprise Planing Mill Co. v. Methodist Episcopal Church,* 100 Neb. 29, 158 N. W. 386.

If, on the other hand, we are to consider the findings in the light of the rule in law cases, where the judge tries the facts without the interposition of a jury, that is, when

a law action is tried to the court, findings of fact have the same effect as findings of a jury, they will not be set aside unless clearly wrong (*Nelson v. Nelson*, 133 Neb. 458, 275 N. W. 829; *Citizens Ins. Co. v. Herpolsheimer*, 77 Neb. 232, 109 N. W. 160; *Miller v. Banner County*, 127 Neb. 690, 256 N. W. 639), then this court cannot on the record presented say that the finding was incorrect, since there is competent evidence on the part of the plaintiff, if believed, to support the finding that the claimed oral agreement was never entered into.

We find no error in the judgment of the district court and said judgment is

AFFIRMED.