FRANK A. PATTERSON, APPELLANT, v, JOHN H. MOREHEAD ET AL., APPELLEES.

FILED JANUARY 15, 1917.   No. 19867.

1. **Appeal:** PLEADING: DEMURRER. When a general demurrer is filed to a petition, the court will pass upon the sufficiency of the petition without receiving evidence by affidavit or otherwise, and this court upon appeal from an order sustaining such demurrer will consider only the sufficiency of the petition.

2. **Injunction:** PRACTICE OF DENTISTRY: RIGHT TO SUE. One who had no license to practice dentistry, nor any permit under section 2806, Rev. St. 1913, could not maintain an action in equity to enjoin the state board from interfering with him in attempting to so practice.

3. **Quære.** Whether mandamus will lie in a proper case to compel the state board to grant an application for examination is not decided.

APPEAL from the district court for Sheridan county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Allen G. Fisher* and *William P. Rooney,* for appellant.

*Willis E. Reed, Attorney General, Dexter T. Barrett* and *Brogan & Raymond, contra.*

SEDGWICK, J.

The plaintiff began this action in the district court for Sheridan county against these defendants as the state board of health and the state board of dental secretaries, and asked for an injunction restraining them "from instituting, in person, or by agent, servant, deputy, or employee, and from proceeding by complaint or information or injunction against the plaintiff in any manner for any alleged violation of the statutes of the state of Nebraska relative to the exercise or practice of the dental science," and to restrain the defendants Pierce and Wallace "from exercising in relation to plaintiff any powers, duties, or functions of membership of the board of dental secretaries of the state of Nebraska," and to enjoin the defendant Jackman from canceling an alleged "agreement and dissolving the relation of preceptor to the plaintiff as apprentice." A temporary injunction was allowed substantially as prayed for. The defendants filed answers in the case, and afterwards depositions were taken. Later on the defendants asked leave to withdraw their answers and to file a demurrer. Leave was granted, and a demurrer was filed on the two grounds that "several causes of action are improperly joined," and "the petition does not state facts sufficient to constitute a cause of action." The court sustained the demurrer and dismissed the petition, and the plaintiff has appealed.

The plaintiff's brief does not comply with rule 12 (Supreme Court Rules, 94 Neb. p. XI), but he makes four assignments of error. The first assignment is that the court erred in considering an affidavit filed by one of the defendants when the demurrer was presented. We will not presume that the court did consider anything

but the petition and the demurrer in passing upon the same, and, if the trial court did, this court would not be required to consider such affidavits.

The second assignment is an allegation that "the plaintiff has acted in good faith, and is entitled to continue as apprentice, under our statutes, until examined and licensed to practice." The statute referred to in this assignment is section 2809, Rev. St. 1913. That section was repealed by the act of 1915. Laws 1915, ch. 50, sec. 11. The allegations of the petition do not show a compliance with that statute which would require us to interfere with the discretion of the state board.

The third assignment is: "The fact of advertising in Minnesota is not such bad morals as will deny license upon due examination and showing of qualifications in the state of Nebraska, his present residence." The allegation of this assignment cannot be successfully controverted, but it does not seem to throw any light upon the sufficiency of this petition to state a cause of action.

The fourth assignment of error is: "The statutes of 1915, confiding the appointment of dental examiners or secretaries to the recommendation of the state dental society, is void and unconstitutional." The matters involved in this petition are all prior to the act of 1915. We cannot find from anything suggested in the brief that the sufficiency of this petition to state a cause of action depends in any respect upon the constitutionality of the act of 1915 referred to. The plaintiff is not entitled to a license to practice dentistry in this state without an examination by the proper board as the statute requires.

Whether the board upon proper application could be compelled by mandamus to grant such an examination is not presented by this record. The plaintiff had no temporary permit under section 2806, Rev. St. 1913, and these defendants could not be enjoined from interfering with the plaintiff in attempting to practice dentistry unless and until the plaintiff had been duly licensed as the statute

requires.   We do not find in this somewhat lengthy petition an allegation that the plaintiff had been licensed to practice dentistry in this state.   This petition cannot be construed as a petition in mandamus to issue such permit or to require the proper authorities to grant the petitioner an examination and to determine his qualifications for a license.   The general demurrer to the petition was therefore properly sustained.

The judgment of the district court is

AFFIRMED.

HAMER, J., dissenting.

This is apparently a controversy between dentists. The state board of health and the state board of dental secretaries are necessarily connected with the struggle. The applicant is a Dane who has been in the United States many years, and has been engaged in the work of dentistry at St. Paul, Minnesota, from which state he comes to Nebraska.   He has also done dental work elsewhere.   If I understand his petition, he has been for more than 14 years engaged in dental work.   He has lived by his labor in this capacity.   He has a family dependent upon him for support, and he craves the seemingly modest privilege of being an apprentice to one Dr. E. A. Jackman, a competent and licensed practitioner of dentistry at Gordon, Nebraska.   It is claimed that there is a rival dentist across the street from Dr. Jackman, and that Dr. Jackman is getting the benefit of the labor of the applicant to the great disadvantage of the dentist across the street.   We have nothing directly to do with the controversy between rival dentists, no difference which side of the street they occupy.   The applicant shows a certificate of one M. F. Andrews, "Official Examiner for the Ohio State School Commissioner."   This certificate certifies his admission to "The Cincinnati College of Dental Surgery, Dental Department, Ohio University."   There are also some other exhibits, including the photograph of the applicant.   It

shows the face of a courageous and patient man. The
state board of health and the state board of dental
secretaries filed answers to the plaintiff's petition, and
evidence was taken by leave of the court.

In the answer of the state board of dental secretaries
it is set forth that a "temporary permit to practice
dentistry" was issued to the applicant on or about April
14, 1914; that this "permit granted to plaintiff the
right to practice dentistry until the next regular meet-
ing of the dental secretaries;" that at said meeting the
applicant would be allowed to present satisfactory evi-
dence of his eligibility "for examination for permanent
license to practice dentistry, * * * as required by
section 2807, Rev. St. 1913." He was ordered "to furnish
surgical instruments for use in operative dentistry." The
applicant seems to have appeared, but did not produce
"satisfactory evidence." Nothing is said about whether
he produced the instruments. It is claimed in this
answer that the applicant's arrangement with Dr. Jack-
man to become his apprentice was for the purpose of
continuing "his illegal practice of dentistry" in violation
of section 2811, Rev. St. 1913. It is claimed by the
defendants that plaintiff is violating section 2809, Rev.
St. 1913, and allied sections. This brings that section
up for consideration, although it is now repealed, because
the applicant begun his efforts under it and the other
sections of that act. Rev. St. 1913, secs. 2795-2820.
The act referred to regulates the practice of dentistry
in this state. No one questions the right of the dental
profession to prescribe reasonable rules and regulations
concerning the practice of their profession.

While the district court permitted the defendants to
withdraw their answers and to demur to the petition,
it had before it the evidence offered, and it seems to
have been willing that the evidence taken should be
considered by this court, and the judge certifies: "Be it
remembered that at the trial of this cause, had before
the Honorable William H. Westover, judge of said court,

the plaintiff offered in evidence the papers herein set out; and the plaintiff also offered to take and file as evidence herein the certain depositions which are now hereunto attached; and it was ordered that he might take those depositions and include them in the proposed bill of exceptions." In the journal entry it is said: "And now the said defendants, excepting Jackman, having asked to withdraw their joint answer herein and file demurrer in lieu thereof, plaintiff objects to granting such permission, for the reason that upon the issues joined the defendants have taken depositions and the plaintiff has cross-examined thereon, so that he is entitled to a trial on the merits herein; but the court, having heard the argument of counsel, and being fully advised in the premises, doth overrule said objection, to which plaintiff excepts, and said permission is granted, and accordingly the answer of all defendants is withdrawn, and the defendants, comprising the state board of health and the state board of dental secretaries, and J. E. Woolm, file herein their demurrer to the petition of plaintiff; and now the court, having heard the argument of counsel, and being fully advised in the premises, doth sustain said demurrer in its entirety." The usual 40 days is given to settle the bill of exceptions. One hundred dollars was fixed as the supersedeas bond.

The majority opinion in this case is necessarily based on section 2809, Rev. St. 1913. That section contemplates that the apprentice "desiring to enter upon the practice of dentistry in the state of Nebraska, without graduating from a reputable college in the United States, or producing satisfactory evidence of having been a licensed practitioner in some other state for at least five years, must file with the dental secretaries an affidavit * * * of his intention to begin an apprenticeship with a licensed practitioner of this state." It is then said in this section that "said affidavit must show that the affiant has regularly graduated from a high school or similar place of learning in the United States."

The objection to the section is that the applicant must be a graduate of a reputable college in the United States, or must have been a licensed practitioner in some other state (than Nebraska) for at least five years (a very long time), or he must show that he "has regularly graduated from a high school or similar place of learning in the United States." One or the other of the above things must exist before he can "begin an apprenticeship." I do not object that the dentist shall be possessed of a fair amount of education (the more the better), but it is hard upon an apprentice to say that he shall not start until he has been educated. It ought to be enough if he comes out with an education before he is turned loose as a dentist. If he works while he is an apprentice, he does so under the direct instruction, supervision and direction of the proprietor or another competent dentist. This ought to be enough. The purpose of this section is apparently to cut down the number of dentists and to prevent those who have not received their instruction in the United States from engaging to learn the profession with a practitioner in Nebraska. No difference how competent the proposed apprentice in dentistry might be, he would be excluded under this section.

The section is also objectionable because the proposed apprentice must have received his education in a Nebraska high school or similar place of learning, unless he is a graduate of a reputable college in the United States, or has been a licensed practitioner in some other state (of the United States) for at least five years. The purpose is apparently the creation of an exclusive class in which skilled workmanship, resting on its merits, shall not be entitled to any place. The statute aims at the creation of a monopoly. Nor is it to the interest of the people at large that a proposed apprentice may not be a beginner unless he can produce "satisfactory evidence of having been a licensed practitioner in some other state for at least five years." I think the section

is clearly against public policy. Please to remember that the applicant has up to date been beaten under this section. This section would deprive the whole people of workmen in dentistry who may come from other states and from other countries. It was an un-American section. Canadians speak English very much as we speak it. They are born in a country very much like that in which we live. Very many of them come across the line and make their homes with us. They are found in nearly all the professions and in many of the useful occupations. The Englishman, Scotchman and Irishman come here speaking our tongue and thinking many of the thoughts which we think. They fight battles of the same sort which we fight—battles against ignorance, oppression and vice. The German is said to be the Englishman's cousin. The Scandanavian is related to all of us. All these people readily assimilate with our people. They ought not to be barred out, or driven away by hostile legislation. I do not want the time to come when all the learned professions and the best occupations shall be in the hands of a privileged aristocracy living off of the necessities of the American people. While the section named has been repealed and most of the allied sections have been amended, the whole tendency of the act is yet to exclude good people from becoming dentists. It is one of the most necessary professions.

Our court in *State v. Sperry & Hutchinson Co.*, 94 Neb. 785, 49 L. R. A. n. s. 1123, has announced a principle which seems to be inconsistent with the section referred to. In that case the question was the right of the Nebraska legislature to pass an act prohibiting the business of giving and redeeming trading stamps. The act was held to be violative of section 1 of the Nebraska Bill of Rights, and also Amendment XIV of the Constitution of the United States. Section 1 of the Nebraska Bill of Rights reads: "All persons are by nature free and independent, and have certain inherent and inalienable rights; among these are life, liberty and the pursuit of happiness. To

secure these rights, and the protection of property, governments are instituted among people, deriving their just powers from the consent of the governed." Section 13 of the Nebraska Bill of Rights reads: "All courts shall be open, and every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due course of law and justice administered without denial or delay." That part of article XIV of Amendments to the Constitution of the United States, which seems applicable to the instant case, reads: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

If a dentist may not take an apprentice into his office with a view to getting the benefit of his labor, and with a view to instructing the apprentice, then both are denied liberty and property without due process of law. Nor do they receive the equal protection of the laws. A similar question has been before the supreme court of North Dakota, in the case of *Malin v. La Moure County*, 27 N. Dak. 140, 50 L. R. A. n. s. 997. In that case they undertook to make proceedings in the courts so expensive as to be prohibitive. By a decision of the courts they were promptly opened to the public.

The applicant in this case comes from Minnesota, where it is claimed by his counsel he had earned a diploma and was engaged in the practice of dentistry. He attacks the constitutionality of the whole act. He charges that it creates a trust or monopoly such as is denounced in subdivision 5, sec. 4017, Rev. St. 1913. It is a novelty to try a case on the merits and then to withdraw the answers and stand on a demurrer.

It is objected that the plaintiff has availed himself of the remedy of injunction. I express no opinion about this, but I call attention to the fact that section 2815b,

of the act of 1915 (Laws 1915, ch. 50), amending and repealing certain sections of the act relating to the practice of dentistry, provides: "Whenever any person is found violating any of the provisions of this act, the state board of dental secretaries, or any citizen, may maintain an action in equity in the name of said state board of dental secretaries or said citizen, to perpetually enjoin said person from doing any of the acts above described." It is suggestive that, if an injunction may be used on one side, it possibly might be used on the other side. It would seem that the act ought to be still further amended and more objectionable sections cut out.

If the evidence taken in the district court and certified to us in the bill of exceptions may properly be considered here then it would seem that the applicant ought to be admitted to practice dentistry. He seems to have attended a dental school, to have stood well in his examinations, and to have done much dental work, and is probably an efficient workman, but I am not certain that he has ever had a license. In any event it appears to the writer that the district court erred in failing to overrule the demurrers of the defendants to plaintiff's petition.